1  NANCY LU  (SBN 255792)
   LAW OFFICES OF NANCY LU
2  500 Airport Blvd., Suite 100
   Burlingame, CA 94010
3  Phone:  (650) 579-6622
   Fax:      (650) 579-6632
4  E-mail: nancy@lucounsel.com

5  Attorney for Plaintiffs

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  CHONGQING BORN SCIENCE &              Case No.  '11 CV1697 LAB BLM
    TECHNOLOGY (GROUP) CO., LTD.;
12  CHONGQING GLOBAL ZENITH              COMPLAINT FOR DAMAGES
    INFORMATION TECHNOLOGY CO., LTD.;
13  and JM ALLIANCE, INC.,                (1) Violation of RICO, 18 U.S.C. §
                                              1962(c)
14         Plaintiffs,                    (2) Violation of RICO, 18 U.S.C. §
                                              1962(d)
15              v.                        (3) Fraud and Deceit
                                          (4) Breach of Contract
16  JEFF HOOD; SCOTT ROBERTSON;           (5) Violation of Unfair Competition
    PATHPOINT ASSOCIATES, INC.; ALBERT        Law, Cal. Bus. & Prof. Code, §
17  CASTILLO; WEB ENTERTAINMENT, LLC;          17200 et seq.
    and DOES 1-10,
18                                        DEMAND FOR JURY TRIAL
           Defendants.
19

20

21                        **NATURE OF ACTION**

22         1.      This action arises out of defendants' conspiracy and scheme to defraud

23  plaintiffs for the purpose of enriching themselves. Beginning in November 2009, defendants

24  Jeff Hood, Scott Robertson and Pathpoint Associates, Inc. ("Pathpoint") toured China and

25  made elaborate and false representations to plaintiffs and other Chinese tech companies that

26  Pathpoint was a successful and large consulting company that could bring them lucrative

27  outsourcing contracts. Hood, Robertson and Pathpoint further promised each plaintiff

28  $650,000 to $750,000 worth of outsourcing business within one year of signing a contract with

1

Complaint for Damages

Pathpoint. However, they had no intention of keeping these promises, as their true intention was to obtain from plaintiffs the "risk sharing guarantee" fee ("RSG Fee"), 3% of the promised amount of business due after signing a contract with Pathpoint, and the "Services Fee," 3% of the promised amount of business due after the signing of the first project provided by Pathpoint. Furthermore, Hood, Robertson and Pathpoint falsely represented to plaintiffs that the RSG Fee would be refunded if Pathpoint failed to provide the promised amount of business. Based on these misrepresentations, each of the plaintiffs signed a contract with Pathpoint and paid Pathpoint the RSG Fee.

2.      In order to conceal and further their conspiracy and scheme to defraud plaintiffs, Hood, Robertson and Pathpoint provided numerous fake project leads to plaintiffs. They also conspired with defendants Albert Castillo and Web Entertainment, LLC ("Web") to provide each plaintiff a signed project in order to obtain plaintiffs' technical services and the Services Fee. Hood, Robertson and Pathpoint also falsely represented Web as capable of providing future contracts to each plaintiff worth $250,000 to $336,000. Moreover, in order to conceal and further their conspiracy and scheme to defraud plaintiffs, defendants falsely represented to plaintiffs that Pathpoint would be responsible in collecting Web's payment for plaintiffs. Based on these misrepresentations, each of the plaintiffs entered into a contract with Web.

3.      Plaintiff Chongqing Born Science & Technology (Group) Co., Ltd. ("Born") independently disputed Pathpoint's collection of Web's payment for Born. Born also independently researched and learned of facts concerning Web that caused Born to doubt defendants' representations concerning Web and to ask for the refund of their RSG fee. However, plaintiffs JM Alliance, Inc. ("JMA") and Chongqing Global Zenith Information Technology Co., Ltd., ("Zenith") were unaware of Born's research and the resulting information as plaintiffs first communicated with each other in or around August 2010 concerning defendants' fraud. In March 2010, relying on defendants' misrepresentations, JMA and Zenith paid Pathpoint the applicable Service Fee and subsequently completed their respective projects for Web.

Complaint for Damages

4.     As a result of defendants' conspiracy and scheme to defraud plaintiffs, plaintiffs suffered damages in the amount of $159,049 to their business and property. Plaintiffs therefore seek relief against defendants for damages, trebled pursuant to the Racketeering Influenced and Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., punitive damages and attorney fees and costs incurred in this action.

### PARTIES

#### Plaintiffs

5.     Plaintiff Born is a limited liability company duly organized under the laws of the People's Republic of China.

6.     Plaintiff Zenith is a limited liability company duly organized under the laws of the People's Republic of China.

7.     Plaintiff JMA is a corporation duly organized under the laws of the State of California.

#### Defendants

8.     Defendant Jeff Hood is an individual and resident of Cherokee County, Georgia. Hood was at all relevant times the Vice Chairman of defendant Pathpoint.

9.     Defendant Scott Robertson is an individual and a resident of San Diego County, California. Robertson was at all relevant times the President and CEO of Pathpoint.

10.     Defendant Pathpoint is a corporation that maintained at all relevant times a bank account and its principal place of business in San Diego County, California.

11.     At all relevant times, Pathpoint was an alter ego of Hood and Robertson. On information and belief and at all relevant times, Hood and Robertson managed and controlled Pathpoint, commingled Pathpoint's funds with their own funds and treated Pathpoint's assets as their own. On information and belief and at all relevant times, Pathpoint did not file any tax returns, pay income taxes or payroll taxes. Pathpoint also had inadequate or nonexistent capitalization. Hood and Robertson used Pathpoint as a subterfuge to avoid liability for their conspiracy and scheme to defraud plaintiffs.

12.     Defendant Albert Castillo is a resident of Williamson County, Texas. Castillo

3

Complaint for Damages

was at all relevant times the owner, CEO and person in control of defendant Web.

13.     Defendant Web is a limited liability company that maintained at all relevant times its principal place of business in Williamson County, Texas.

14.     Web was the alter ego of Castillo. On information and belief and at all relevant times, Castillo commingled Web's funds with his own funds and treated Web's assets as his own. Web also had inadequate or nonexistent capitalization. Castillo used Web as a subterfuge to avoid liability for his conspiracy and scheme to defraud plaintiffs with other defendants.

15.     The true names and capacities of defendants Does 1 through 10, inclusive, are unknown to plaintiffs at this time. Therefore, plaintiffs sue said defendants by such fictitious names and will amend this Complaint to allege their true names, capacities and wrongdoing when ascertained. On information and belief, plaintiffs allege that each defendant designated herein as a Doe is responsible in some manner for the acts and omissions alleged in this Complaint and proximately caused the damages suffered by plaintiffs as alleged in this Complaint.

## JURISDICTION AND VENUE

16.     Pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §§ 1964(c), 1965, this Court has subject matter jurisdiction over plaintiffs' claims arising from RICO, 18 U.S.C. § 1961 et seq. This Court also has supplemental jurisdiction over plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a). Plaintiffs' state-law claims arise from a common nucleus of operative facts as plaintiffs' RICO claims.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(b). Defendant Robertson is a resident of San Diego County, and this district has personal jurisdiction over both Robertson and Pathpoint. Defendants are co-conspirators as alleged herein. There is no other district in which a court will have direct personal jurisdiction over all of the defendants. Moreover, defendants should not be allowed to evade justice or thwart plaintiffs' legal action against them simply because they reside in different districts. The ends of justice require that all defendants be brought before this Court.

//

4

## GENERAL ALLEGATIONS

### The Beginning of Defendants' Conspiracy and Scheme to Defraud

18.     In November 2009, Hood, Robertson and Pathpoint, visited plaintiffs and other companies in China. (Pathpoint, Travel Plan of Pathpoint Onsite Evaluation Team, a copy of which is attached hereto as **Exhibit 1**.) Prior to their visit, Pathpoint distributed a document entitled, 帕斯博公司简介, or "A Brief Introduction of Pathpoint Company" ("Introduction") either directly or through government agencies to plaintiffs and other Chinese companies. In the Introduction, Pathpoint falsely represented to plaintiffs and other Chinese companies that Pathpoint had 362 U.S. technical companies as its regular or long-term clients and generated $100 million of business annually for information technology outsourcing ("ITO") companies and enterprises worldwide. (Pathpoint, Introduction, p. 3, and certified translation, a copy of which is attached hereto as **Exhibit 2**). Pathpoint also falsely represented to plaintiffs and other Chinese companies in the Introduction that Pathpoint's purpose in visiting China was to select outsourcing companies for its U.S. clients so that its U.S. clients could complete their annual $12 million worth of outsourcing. (*Id*.)

19.     During their China tour, Hood, Robertson and Pathpoint made a presentation to plaintiffs and other Chinese companies where they made the following false representations to make Pathpoint appear as a large and successful consulting company: (i) that Pathpoint had sales teams in four cities, Atlanta, New York, Chicago and Dallas (Pathpoint, Pathpoint Advanced Consulting Company ("Presentation"), p. 14, and certified translation, a copy of which is attached hereto as **Exhibit 3**); (ii) that Pathpoint had a total combined experience of 90 years and had sold over $250 million worth of services (*id*.); (iii) and that Pathpoint had worked with large companies such as Bank of America and General Electric (*id*. at p. 16).

### The First Set of Fraudulent Transactions

20.     Based on the foregoing, plaintiffs reasonably believed that Pathpoint would be able to secure outsourcing projects for them. Furthermore, Robertson and Pathpoint promised each plaintiff specific amounts of business by written contract. Robertson and Pathpoint promised JMA $750,000 worth of business within the first year of signing a contract with

Complaint for Damages

Pathpoint. A true and correct copy of the Pathpoint contract executed by JMA on December 21, 2009, is attached hereto as **Exhibit 4**. Robertson and Pathpoint also promised Born $750,000 worth of business within one year of signing a contract with Pathpoint. A true and correct copy of the Pathpoint contract executed by Born on December 30, 2009, is attached hereto as **Exhibit 5**. Robertson and Pathpoint further promised Zenith $650,000 worth of business within one year of signing a contract with Pathpoint. A true and correct copy of the Pathpoint contract executed by Zenith on January 7, 2010, is attached hereto as **Exhibit 6**. The contracts between plaintiffs and Pathpoint, each entitled "Business Service Contract," are hereafter the "BS Contracts."

21.   Pursuant to the BS Contracts, each of the plaintiffs wire-transferred to Pathpoint's U.S. bank account the RSG Fee. The RSG Fee is 3% of the promised amount of business due after signing a contract with Pathpoint. (BS Contracts, Exhs. 4-6, § 8.1.) Plaintiffs paid to Pathpoint a total of $64,500 in RSG Fees. A true and correct copy of the wire transfer receipts and applicable certified translations is attached hereto as **Exhibit 7**. The BS Contracts require Pathpoint to refund plaintiffs the RSG Fee if Pathpoint failed to provide the promised amount of business within one year of signing the contract. (See BS Contracts, Exhs. 4-6, § 1.2.) The deadlines for Pathpoint to provide JMA, Born and Zenith the promised amount of business were December 21, 2010, December 30, 2010, and January 7, 2011, respectively. However, Hood, Robertson and Pathpoint had no intention of abiding by the BS Contracts; their objective was to defraud plaintiffs. Accordingly, Hood, Robertson and Pathpoint not only failed to provide the promised amount of business to plaintiffs by the required deadlines but also failed to refund plaintiffs' RSG Fees.

22.   Furthermore, the BS Contracts require Pathpoint to provide each plaintiff with a signed project within 60 days of signing of their respective contracts. The deadlines for providing a signed project to JMA, Born and Zenith were February 19, 2010, February 29, 2010, and March 8, 2010, respectively. (See Exhs. 4-6, § 5.1.) Again, Hood, Robertson and Pathpoint failed to provide each of the plaintiffs a signed project within the 60-day period, as their only intention was to defraud plaintiffs.

6

Complaint for Damages

## The Fake Project Leads

23.     In order to conceal and further their fraudulent scheme, Hood, Robertson and Pathpoint provided plaintiffs with numerous fake project leads. Hood, Robertson and Pathpoint provided JMA with fake project leads, such as the ODC (offshore dedicated center) project from eConsortian (see e-mails between Jie Li, CEO of JMA, and Hood, Jan. 6, 2010-Jan. 26, 2010, a copy of which is attached hereto as **Exhibit 8**) and the Java project from HEB (see e-mails between Li and Hood with carbon copy to Robertson, Feb. 4, 2010-Feb. 17, 2010, a copy of which is attached hereto as **Exhibit 9**). Hood and Pathpoint also provided JMA with a test project from eConsortian with the false promise that if JMA were successful in completion of the test project, JMA would secure the ODC project. JMA did successfully complete the test project (see e-mails between Li and Hood, Feb. 24, 2010-Feb. 25, 2010, a copy of which is attached hereto as **Exhibit 10**) but never received the ODC project from eConsortian.

24.     Similarly, Hood, Robertson and Pathpoint provided Born and Zenith with fake project leads. Born followed-up on these project leads but did not receive any response. A true and correct copy of the e-mails from Richard Xia, Project Manager of Born until July 2010, to Hood with carbon copy to Robertson from January 21, 2010, to March 8, 2010, and certified translation is attached hereto as **Exhibit 11**. A true and correct copy of the e-mails between Jason Lee, Sales Manager of Zenith until June 2010, and Robertson with carbon copy to Hood from May 12, 2010, to May 18, 2010, concerning the fake project leads to Zenith is attached hereto as **Exhibit 12**. Moreover, Hood, Robertson and Pathpoint provided each plaintiff with the same fake project lead, SecureIT Project Management Application. A true and correct copy of Hood's e-mails with carbon copy to Robertson introducing this project to each plaintiff, the attached project specification and applicable certified translation is attached hereto as **Exhibit 13**.

## The Second Set of Fraudulent Transactions

25.     Defendants agreed and conspired to offer each plaintiff a signed project by Web in order to obtain from plaintiffs the Services Fee and plaintiffs' technical services. The

7

1  Services Fee is 3% of the total amount of business promised and due upon signing of the first

2  project provided by Pathpoint. (BS Contracts, Exhs. 4-6, § 10.1.)

3       26.     On March 3, 2010, Hood, Robertson and Pathpoint offered JMA a signed

4  project from Web with the promise that if JMA were successful in completing this initial

5  project, there would be more projects with Web and the false representation that Web could

6  support $250,000 worth of business annually. (See Hood, e-mail to Li, carbon copy to

7  Robertson, Mar. 3, 2010, and e-mail attachment, JM Alliance-Web Entertainment LLC

8  Agreement, a copy of which is attached hereto as **Exhibit 14**; Robertson, e-mail to Li, carbon

9  copy to Hood, Mar. 3, 2010, a copy of which is attached hereto as **Exhibit 15**.) Defendants

10  also falsely represented to JMA that the Web project was a legitimate project. (*Id.*) Based on

11  defendants' false representations, JMA entered into a contract with Web on March 4, 2010

12  ("JMA-Web Contract"), a copy of which is attached hereto as **Exhibit 16**.

13       27.     Only several days later, on March 10, 2010, Robertson and Pathpoint also

14  offered Born a pilot project from Web with the false representation that if Born successfully

15  completed the pilot project, Born would receive a long-term contract from Web worth

16  $252,000. A true and correct copy of the e-mails from Robertson to Xia on March 10, 2010, at

17  4:39 p.m. and 5:51 p.m., and respective e-mail attachments, Born 1st Project Overview, is

18  attached hereto as **Exhibit 17**. However, upon realizing that they mixed up their victims and

19  had mistakenly sent Zenith's project to Born, Robertson and Pathpoint then provided Born

20  with a different project and the false representation that Born's successful completion of the

21  pilot project would result in a long-term contract with Web worth $336,000 not the $252,000

22  as originally promised. A true and correct copy of the e-mails from Robertson to Xia on March

23  10, 2010 at 6:01 p.m. and 6:31 p.m., and respective e-mail attachments, Born 1st Project

24  Overview, rendered inline, is attached hereto as **Exhibit 18**. Defendants further falsely

25  represented to Born that the Web project was a legitimate project. (See *id.*; Robertson, letter to

26  Xia, carbon copy to Hood, Mar. 11, 2010, and e-mail attachment, Chongqing Born Science

27  &Technology [*sic*]-Web Entertainment LLC Agreement, a copy of which is attached hereto as

28  **Exhibit 19**.) Based on defendants' false representations, Born entered into a contract with

8

Web concerning the pilot project on March 12, 2010 ("Born-Web Contract"), a copy of which is attached hereto as **Exhibit 20**.

28.    Again, on March 10, 2010, Robertson and Pathpoint offered Zenith a pilot project from Web with the false representation that if Zenith successfully completed the pilot project, Zenith would receive a long-term contract with Web worth $252,000. A true and correct copy of the e-mail from Robertson to Lee, March 10, 2010, and e-mail attachment, Global ZT-1st Project Overview, is attached hereto as **Exhibit 21**. This pilot project is the exact project that Robertson and Pathpoint had mistakenly sent to Born. (Compare Born 1st Project Overview, Exh. 17, with Global ZT-1st Project Overview, Exh. 21.) Defendants also falsely represented to Zenith that the Web project was a legitimate project. (See Robertson, e-mail to Lee, *supra*, Exh. 21; Robertson, e-mail to Lee, carbon copy to Hood, Mar. 14, 2010, and e-mail attachment, Chongqing Global Zenith Information Technology Co., Ltd.-Web Entertainment LLC Agreement, a copy of which is attached hereto as **Exhibit 22**.) Based on defendants' false representations, Zenith entered into a contract with Web on March 15, 2010 ("Zenith-Web Contract"), a copy of which is attached hereto as **Exhibit 23**.

29.    In order to conceal and further defendants' conspiracy and scheme to defraud plaintiffs, defendants falsely represented to JMA that Pathpoint would collect the $8,000 payment from Web for JMA. (See Robertson, e-mail to Li, Mar. 4, 2010, and e-mail attachment, Invoice, rendered inline, a copy of which is attached hereto as **Exhibit 24**; Hood, e-mail to Li and JM Alliance-Web Entertainment LLC Agreement, *supra*, Exh. 14; JMA-Web Contract, Exh. 16, § 3.) In fact, Web never intended to pay JMA and never paid such an amount to Pathpoint. Robertson and Pathpoint also represented that $8,000 was deducted from JMA's 3% Services Fee in order to make it appear that JMA received the payment. (See Invoice, Exh. 24.) Based on defendants' misrepresentations, JMA wired the 3% Services Fee of $14,500 to Pathpoint's U.S. bank account. A true and correct copy of the wire transfer receipt is attached hereto as **Exhibit 25**. In order to conceal their part in defrauding JMA, Castillo and Web further falsely represented to JMA that Web paid Pathpoint the full amount. (Castillo, Skype message to Li, Nov. 30, 2010, a copy of which is attached hereto as **Exhibit**

9

**26**.) While plaintiffs have asked for a receipt of such payment to Pathpoint, Castillo and Web have not responded.

30.     In order to conceal and further defendants' conspiracy and scheme to defraud plaintiffs, defendants similarly provided the false representation to Zenith that Pathpoint would collect the $8,000 payment from Web for Zenith. (See Robertson, e-mail to Lee, *supra*, Exh. 22; Zenith-Web Contract, Exh. 23.) Robertson and Pathpoint also falsely represented that the $8,000 was deducted from Zenith's 3% Services Fee in order to make it appear that Zenith received the payment. (Robertson, e-mail to Lee, Mar. 15, 2010, and attachment, Invoice, rendered inline, a copy of which is attached hereto as **Exhibit 27**.) Based on defendants' misrepresentations, Zenith wired the 3% Services Fee of $11,500 to Pathpoint's U.S. bank account. A true and correct copy of the wire transfer receipt and certified translation is attached hereto as **Exhibit 28**.

31.     In order to conceal and further defendants' conspiracy and scheme to defraud plaintiffs, defendants also represented to Born that Pathpoint would pay the $8,000 to Born for Web. (See Robertson, e-mails to Xia, *supra*, Exh. 18.) Again, Hood, Robertson and Pathpoint represented to Born that Pathpoint would pay Born the $8,000 by deducting that amount from Born's 3% Service Fee. (See Robertson, e-mail to Jack Soong, Vice President of Born, carbon copy to Hood, Mar. 11, 2010, and attachment, Invoice, a copy of which is attached hereto as **Exhibit 29**.)

32.     However, Born asked that Web pay the $8,000 directly to Born. In order to further conceal defendants' conspiracy and scheme to defraud plaintiffs, Hood, Robertson and Pathpoint argued that under U.S. law, the $8,000 credit constituted payment. (Hood, e-mail to Soong and Robertson, Mar. 15, 2010, a copy of which is attached hereto as **Exhibit 30**.) Then later, Hood, Robertson and Pathpoint changed their story and falsely represented to Born that Pathpoint received only $2,000 from Web and would wire this amount to Born, provided that Born would wire the 3% Services Fee of $22,500. (Hood, e-mail to Soong, carbon copy to Robertson, Mar. 16, 2010 and Robertson, e-mail to Soong, Mar. 17, 2010, a copy of which is attached hereto as **Exhibit 31**.) Born declined to accept the $2,000 and required that Born be

10

Complaint for Damages

1   paid the full $8,000.

2        33.    During the dispute between Born and Pathpoint concerning Web's payment,

3   Born conducted research on Web and became doubtful of Web's ability to outsource $336,000

4   worth of business as represented. For example, Born found that Web's office was not located

5   in an office building, but in a residential neighborhood. Additionally, from Castillo's LinkedIn

6   profile, Born found out that Castillo was a mere product manager at IF Marketing &

7   Advertising. (LinkedIn, Profile of Albert Castillo, http://www.linkedin.com/in/seemeplayme

8   [as of July 25, 2011], a copy of which is attached hereto as **Exhibit 32**.) Furthermore, Web

9   could not provide clear project specifications and guidelines for Born to start the project for

10  Web. (See e-mails between Xia and Castillo, Mar. 12, 2010-Mar. 18, 2010, and certified

11  translation, a copy of which is attached hereto as **Exhibit 33**.) Subsequently, Born asked

12  Pathpoint to refund Born's payment of the RSG Fee, but Pathpoint refused.

13       34.    JMA and Zenith were unaware of the dispute between Born and Pathpoint or

14  the results of Born's research as plaintiffs first communicated with one another concerning

15  defendant's fraud in or around August 2010. Accordingly, after signing the contracts with Web

16  in March 2010, JMA and Zenith worked in good faith to complete their respective projects for

17  Web and did in fact complete those projects. In addition, Castillo and Web indicated that they

18  were happy with JMA's work. (Castillo, Skype message to Li, *supra*, Exh. 26, p. 218.) In

19  order to complete the Web project, JMA expended a significant amount of resources. A true

20  and correct copy of the bank records of JMA salary payments related to the Web project and

21  certified translation is attached hereto as **Exhibit 34**. (Sichuan JM Technology Co., Ltd,

22  referenced in the bank records, is a wholly-owned subsidiary of JMA.) The total damage

23  suffered by JMA arising from the Web project was $22,637, consisting of the Web project

24  completion ($8,000), employee salary ($13,105) and employee insurance ($1,532), based on

25  the current exchange rate of 6.5 ¥/$.

26       35.    Zenith also worked in good faith with Castillo and Web to complete a project

27  for Web and did in fact complete such project. (See e-mails between Zhang Le (a.k.a.

28  "Tristan"), Project Manager of Zenith until Dec. 2010, and Castillo, Mar. 18, 2010-June 23,

Complaint for Damages

2010, a copy of which is attached hereto as **Exhibit 35**; e-mails between Selina Jun, Sales Assistant of Zenith, and Castillo, Aug. 3, 2010-Aug. 19, 2010, a copy of which is attached hereto as **Exhibit 36**.) However, Castillo and Web stopped corresponding with Zenith as they never responded to Zenith's correspondence of August 19, 2010. In order to complete the Web project, Zenith expended a significant amount of resources. A true and correct copy of the bank records of Zenith's salary payments related to the Web project and certified translation is attached hereto as **Exhibit 37**. A true and correct copy of the receipts of equipment purchased for the Web project and certified translation is attached hereto as **Exhibit 38**. The total damage suffered by Zenith arising from the Web project was $26,412, consisting of the Web project completion ($8,000), employee salary ($11,400), employee insurance ($2,557) and equipment costs ($4,455), based on the current exchange rate of 6.5 ¥/$.

36.     By about August 2010, Robertson and Pathpoint stopped corresponding with JMA and Zenith. In order to conceal his part in defendants' conspiracy and scheme to defraud plaintiffs, Hood began to claim that he was only a consultant to Pathpoint. (Hood, Skype message to Li, Aug. 17, 2010, a copy of which is attached hereto as **Exhibit 39**.) However, Hood, Robertson and Pathpoint have represented Hood as the Vice Chairman of Pathpoint to plaintiffs, as demonstrated by the numerous correspondences attached in the exhibits of this Complaint. Hood even passed out his business cards to plaintiffs representing himself as the Vice Chairman of Pathpoint. A true and correct copy of Hood's business card and the Chinese version is attached hereto as **Exhibit 40**.

## Plaintiffs' Efforts to Resolve the Dispute

37.     Plaintiffs tried in good faith to demand the refund of their monies and to settle this matter informally. Plaintiffs also gave defendants over two weeks to respond to their demand, with a deadline of January 7, 2011. However, defendants declined. Moreover, in order to destroy evidence, Robertson removed Pathpoint's website on January 6, 2011, the day before the response deadline. (See DomainTools, LLC, Pathpointa.com Whois Record, http://whois.domaintools.com/pathpointa.com> [as of May 20, 2011], a copy of which is attached hereto as **Exhibit 41**.)

12

Complaint for Damages

38.     Plaintiffs also tried in good faith to seek mediation. A true and correct copy of plaintiffs' letters seeking mediation and documents confirming delivery is attached hereto as **Exhibit 42**. Defendants again declined, with Pathpoint asserting that mediation should be in Nevada. While not agreeing that mediation must be in Nevada, plaintiffs in good faith requested mediation with Pathpoint in Nevada to resolve this matter. A true and correct copy of plaintiffs' letter requesting mediation in Nevada and fax transmission report is attached hereto as **Exhibit 43**. However, Pathpoint declined. Furthermore, plaintiffs subsequently contacted Pathpoint by telephone and left a message with Pathpoint's attorney, Albert, requesting for mediation, but Pathpoint did not respond. Accordingly, plaintiffs have no option but to file this Complaint to seek redress for defendants' conspiracy and scheme to defraud plaintiffs.

## **FIRST CLAIM**

### **Violation of RICO, 18 U.S.C. § 1962(c) Against All Defendants**

39.     Plaintiffs reallege paragraphs 1-38.

40.     Each of the plaintiffs is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

41.     Each of the defendants is a "person" under 18 U.S.C. §§ 1961(3) and 1962(c).

42.     Defendants formed an association-in-fact for the purpose of defrauding plaintiffs. This association-in-fact was an "enterprise" under 18 U.S.C. §§ 1961(4) and 1962(c) that at all relevant times engaged in activities affecting interstate and foreign commerce.

43.     Defendants associated with the enterprise and knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

44.     The "pattern of racketeering activity" consisted of defendants' commission of numerous acts of wire fraud in violation of 18 U.S.C. § 1343. These acts were related to each other by virtue of the same participants, the same or similar method of commission, and the same purpose and result of defrauding plaintiffs to enrich or otherwise benefit defendants. The nature and frequency of defendants' acts of wire fraud demonstrate that such criminal activity threatened to continue in the future and had become the enterprise's regular way of doing

13

Complaint for Damages

business.

45.     Defendants' violation of 18 U.S.C. § 1962(c) directly and proximately caused plaintiffs to suffer damages to their business and property in the amount of **$159,049**.

## SECOND CLAIM

### Violation of RICO, 18 U.S.C. § 1962(d) Against All Defendants

46.     Plaintiffs reallege paragraphs 1-45.

47.     In violation of 18 U.S.C. § 1962(d), defendants conspired to violate 18 U.S.C. § 1962(c); that is, while in association with the enterprise, defendants knowingly and willfully agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through the aforementioned pattern of racketeering activity.

48.     Defendants knew that an object of their conspiracy was to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through the aforementioned pattern of racketeering activity

49.     Each of the defendants knowingly and willfully agreed to personally commit or aid and abet the commission of at least two racketeering acts while knowing that such acts constituted the aforementioned pattern of racketeering activity.

50.     Each of the defendants committed and caused to be committed a series of overt acts in furtherance of defendants' conspiracy.

51.     Defendants' violation of 18 U.S.C. § 1962(d) directly and proximately caused plaintiffs to suffer damages to their business and property in the amount of **$159,049**.

## THIRD CLAIM

### Fraud, Cal. Civ. Code, § 1572, Deceit, Cal. Civ. Code, § 1720 and Common Law Fraud Against All Defendants

52.     Plaintiffs reallege paragraphs 1-38.

53.     With intent to deceive plaintiffs, defendants made numerous false and material representations to plaintiffs relating to Pathpoint, Web, and various projects introduced to plaintiffs, while knowing that such representations were false or had made such representations recklessly without regard for its truth. Furthermore, defendants had no

14

Complaint for Damages

reasonable grounds to believe that such representations were true.

54.    With the intent to deceive plaintiffs, defendants also made material promises to plaintiffs relating to guaranteed amount of business, payment, and refund while having no intention whatsoever to keep such promises.

55.    Defendants further suppressed the truth relating to Pathpoint, Web, and various projects introduced to plaintiffs in order to deceive plaintiffs and further their scheme to defraud plaintiffs.

56.    Defendants' misrepresentations, false promises and suppression of the truth were made so that plaintiffs would rely on them and thereby procure from plaintiffs monies and/or services.

57.     Given the frequency and nature of defendants' misrepresentations, false promises and suppression of the truth, plaintiffs reasonably relied on defendants' misrepresentations and false promises, and such reasonable reliance was a substantial factor in causing plaintiffs to suffer damages to their business and property in the amount of **$159,049**.

58.    Furthermore, defendants' misrepresentations, false promises and suppression of the truth directly and proximately caused plaintiffs to suffer damages to their business and property in the amount of **$159,049**.

### A. Aiding and Abetting of Fraud and Deceit Against All Defendants

59.    Each of the defendants knew that all or at least one other defendant was committing or about to commit fraud against plaintiffs in order to secure monies and/or services from plaintiffs.

60.    Each of the defendants gave substantial assistance and/or encouragement to all or at least one other defendant in the commission of fraud against plaintiffs with the intention to facilitate the other defendant's commission of fraud against plaintiffs. Such assistance included misrepresentations, false promises and suppression of the truth.

61.    Each defendant's assistance and/or encouragement was a substantial factor in causing plaintiffs to suffer damages to their business and property in the amount of **$159,049**.

//

15

Complaint for Damages

**B.  Conspiracy to Commit Fraud and Deceit Against All Defendants**

62.    Each of the defendants was aware that all or at least one other defendant planned to commit fraud against plaintiffs.

63.    Each of the defendants agreed with all or at least one other defendant and intended that fraud be committed against plaintiffs.

64.    Each of the defendants committed overt acts, including misrepresentations, false promises and/or suppression of the truth, to further defendants' conspiracy to commit fraud against plaintiffs and thereby obtain financial gain or other benefit.

65.    Defendants' conspiracy to commit fraud against plaintiffs directly and proximately caused plaintiffs to suffer damages to their business and property in the amount of **$159,049**.

**FOURTH CLAIM**

**Breach of Contract Against All Defendants**

66.    Plaintiffs reallege paragraphs 1-38.

67.    Pathpoint and Web each entered into valid and binding contracts with each of the plaintiffs.

68.    Each plaintiff in good faith performed all the conditions and requirements of the relevant contracts, until each became aware of defendants' fraud. In any event, plaintiffs' performance of any condition or requirement under the contracts was excused by defendants' conspiracy and scheme to defraud plaintiffs.

69.    Pathpoint failed to provide any of the plaintiffs a signed project within the required 60-day period or any valid project at all. Pathpoint failed to provide plaintiffs the promised amount of business within the required one-year period and never intended to provide such amount of business to plaintiffs. Pathpoint's conspiracy and scheme to defraud plaintiffs with the other defendants violated Pathpoint's duty of good faith and fair dealing in the performance of Pathpoint's contracts with plaintiffs.

70.    Web failed to provide each of the plaintiffs the required payment under the contracts and never intended to provide such payments to plaintiffs. Web's conspiracy and

16

Complaint for Damages

1 | scheme to defraud plaintiffs with the other defendants violated Web's duty of good faith and

2 | fair dealing in the performance of its contracts with plaintiffs.

3 |      71.    Pathpoint and Web's breach of their contracts with each of the plaintiffs

4 | directly and proximately caused plaintiffs to suffer damages to their business and property in

5 | the amount of **$159,049**.

6 | **FIFTH CLAIM**

7 | **Violation of Unfair Competition Laws, Cal. Bus. & Prof. Code, § 17200 et seq.**

8 | **Against All Defendants**

9 |     72.    Plaintiffs reallege paragraphs 1-38.

10 | **A.  Fraudulent Business Practices**

11 |     73.    Defendants' made numerous and similar misrepresentations to plaintiffs and

12 | other Chinese companies relating to Pathpoint and Web that were likely to deceive the public.

13 |     74.    Defendants' misrepresentations directly and proximately caused plaintiffs to

14 | suffer damages to their business and property in the amount of **$159,049**.

15 | **B.  Unfair Business Practices**

16 |     75.    Defendants' pattern of misrepresentations relating to Pathpoint and Web were

17 | immoral, unethical, oppressive, unscrupulous and substantially injurious to the public as to

18 | exceed any utility to the defendants.

19 |     76.    Defendants' pattern of misrepresentations directly and proximately caused

20 | plaintiffs to suffer damages to their business and property in the amount of **$159,049**.

21 | **C.  Unlawful Business Practices**

22 |     77.    Defendants' business practices were unlawful in violating RICO, 18 U.S.C. §

23 | 1962(c) and 18 U.S.C. § 1962(d), committing fraud in violation of California Civil Code §

24 | 1572, committing common law fraud and deceit in violation of California Civil Code § 1720

25 | and breaching their contracts with each of the plaintiffs.

26 |     78.    Defendants' pattern of misrepresentations directly and proximately caused

27 | plaintiffs to suffer damages to their business and property in the amount of **$159,049**.

28 | //

Complaint for Damages

1

## PRAYER FOR RELIEF

2        Wherefore, plaintiffs pray for judgment against defendants as follows:

3    1.      General damages in the amount of **$159,049**, trebled to **$477,147** pursuant to 18

4            U.S.C. § 1964(c);

5    2.      Punitive damages; and

6    3.      Attorney fees and costs incurred in this action and any other relief as the court

7            deems just and proper.

8

## DEMAND FOR JURY TRIAL

9        Plaintiffs hereby demand trial by jury.

10

11   Dated: July 29, 2011                    Respectfully submitted,

12                                           LAW OFFICES OF NANCY LU

13

14

15                                  By:   s/Nancy Lu
                                          Attorney for Plaintiffs
16                                        E-mail: nancy@lucounsel.com

17

18

19

20

21

22

23

24

25

26

27

28

18

Complaint for Damages

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

CHONGQING BORN SCIENCE & TECHNOLOGY (GROUP) CO., LTD. ET AL.

## DEFENDANTS

JEFF HOOD ET AL.

**(b)** County of Residence of First Listed Plaintiff   CHINA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   CHEROKEE COUNTY
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

LAW OFFICES OF NANCY LU, 500 AIRPORT BLVD., STE 100, BURLINGAME, CA 94010, (650) 579-6622

Attorneys (If Known)

'11 CV 1697 LAB BLM

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. § 1961 ET SEQ.

Brief description of cause:
VIOLATION OF RICO

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 477,147.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE       DOCKET NUMBER

DATE: 07/29/2011

SIGNATURE OF ATTORNEY OF RECORD: s/Nancy Lu

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____